IN

# THE SUPREME COURT

OF

# PENNSYLVANIA.

EASTERN DISTRICT—PHILADELPHIA, 1875.

## Simpson & Brother's Appeal.

1. Neill and Simpson were joint owners of two wharves in the Delaware, between which was a dock. These wharves and docks were built by them as riparian owners of two pieces of ground, the northern of which (No. 1) embraced within its lines the northern wharf and dock, and the southern wharf and dock were within the lines of (No. 2). They each conveyed their interest to the other, so that each became separate owner, the conveyances being "with the docks and other appertenances." The defendants being lessees under Neill of the first property, which embraced the dock in question, an Act of Assembly was passed giving them the exclusive right to occupy the same, &c., and requiring the harbor master to remove any vessel so moored as to obstruct the use, &c., of the docks. The plaintiffs by their bill claiming that the dock was appertenant to the wharf granted to them, prayed to restrain the defendants from preventing them from the use of it. The defendants answered, denying that the dock was appertenant to plaintiff's wharf, and set up the Act of Assembly. The case was heard on bill and answer. *Held*, in absence of proof of title to the dock, the plaintiffs could not question the effect of the Act of Assembly.

2. The case was governed by the laws relating to harbor masters; if he acted oppressively or improperly the remedy was not in equity.

January — 1874. Before AGNEW, C. J., SHARSWOOD, WILLIAMS, MERCUR and GORDON, JJ.

Appeal from Nisi Prius: In Equity: No. 16, to January Term 1872.

The bill in this case was filed November 6th 1871, by Arthur S. Simpson and Adam M. Simpson, partners, as A. S. Simpson &

(270)

Brother, against The Philadelphia and Southern Mail Steamship Company and A. P. Colesberry, harbor master.

The averments of the bill were as follows:—

John L. Neill and James Simpson were seised in fee as tenants in common of a certain wharf property, including one pier which extends into the river Delaware. Neill was sole seised of the wharf property adjoining the above on the south. As part of one transaction, by deeds bearing even date and recorded on the same day in the same book, Simpson conveyed his undivided half part of the first-mentioned premises to Neill, and Neill conveyed the other property to the plaintiffs, who are sons of James Simpson, "together also with the passages, waters, water-courses, wharves, docks, landings, landing-places, and other appertenances thereunto belonging." The northernmost pier of the plaintiffs is on the line between the two properties, and is, and was, at and before the conveyance, built, fitted and intended for use on its north side, and on account of the width of the dock, this is the most valuable part of it. Plaintiffs claimed that the use of this dock passed to them under the express language of the deed above cited, and would have passed without it as an "apparent easement." Defendants, the Steamship Company, are lessees of Neill's property, having become so since the conveyance. Defendant Colesberry is harbor master of the port of Philadelphia. The Steamship Company claim the exclusive use of the dock, and are interfering with the plaintiffs' use of it, and Colesberry at their instance is assisting them. They are about to interfere with a certain vessel at plaintiffs' pier.

The prayers were that it might be declared, &c., that the plaintiffs were entitled to the use of the pier, &c., without molestation, &c., by defendants, &c.; that the defendants, their servants, &c., be enjoined from interfering with plaintiffs' enjoyment of the pier, &c.

The answer set up that the piers and docks on both properties were constructed prior to 1850. By sect. 2, Act of May 4th 1852 (Pamph. L. 569), the exclusive use of the dock in question was given to the owners and lessees of defendants' wharf then occupied by the Pennsylvania Steamship Company; it was made the duty of the harbor master to remove any vessel in the dock, and it was provided "that the usual charge for occupancy in such cases be paid by said Steamship Company to the owner or owners of such side wharves." The effect which the plaintiffs attribute to the conveyancing set forth in the bill is denied; the inducement to the Steamship Company to accept a lease was the exclusive use of the dock; the interference alleged in the bill is admitted and justified under the act above mentioned.

The following Acts of Assembly relate to the powers and duties of the wardens and harbor master of Philadelphia, viz.:

March 29th 1803, 4 Sm. Laws 67, sect. 4, p. 68. "* * * And

the said wardens shall have full power and authority * * * to direct the mooring of ships and vessels in the harbor and the order in which they shall lay, load or unload at the wharves." * * *

Sect. 16, p. 7.   " The governor shall appoint a person * * * to be harbor master of the port of Philadelphia, * * * and he is hereby required to enforce and superintend the execution of all laws * * * and of all by-laws * * * of the city, * * * and of the wardens * * * for regulating and stationing all ships or vessels in the stream of the river Delaware or at the wharves, * * * for removing from time to time ships and vessels in order to accommodate and make room for others." * * *

February 7th 1818, Pamph. L. 72, provides that no riparian owner shall construct a wharf without a license from the wardens, and according to an approved plan.

April 8th 1851, Pamph. L. 354, sect. 5.   " In all cases when the owners of adjoining wharves, docks, landings or river front * * * in the port of Philadelphia shall disagree as to the proper apportionment of the wharfage or dockage payable to them *in accordance with their titles* * * * the wardens are * * * authorized * * * to determine the relative proportion of such wharfage or dockage." * * *

February 2d 1854, Pamph. L. 21, sect. 28.   " The Councils of Philadelphia shall fix a line beyond which no wharf or pier shall be constructed, and keep the navigable water within the said city for ever open and free from obstruction, * * * they shall authorize the construction of wharves upon a scale to meet the demands of commerce, keep the same and the avenues leading thereto open and free from obstruction * * * and provide for the greater security and better disposition of vessels within the port." * * *

The Councils of Philadelphia, on the 4th of December 1856, fixed the line contemplated by the Act of 1854, and ordained : " That no new wharf shall be erected on the Delaware front which shall not have clear dock room on each side appertaining to such particular wharf of forty feet in width."

The Act of April 8th 1868, Pamph. L. 765, enacted :

Sect. 1. Declares the state the owner outside of low-water mark, and that the riparian owner is the only one having a right to build a pier.

Sect. 2. " The water or dock left for the use of any wharf, shall remain vested in the state, subject to existing laws ; but the owner of such wharf shall be entitled to charge and receive compensation for the same." * * *

Sect. 3. Wharves may be conveyed as other real estate.

Sect. 4. " The breadth of water front appertaining to each owner of land on the river bank shall be determined by protracting the lines of the land to the line established as the limit to which wharves may be built." * * *

The court at Nisi Prius, Sharswood, J., dismissed the bill pro formâ.

The plaintiffs appealed to the court in banc: and assigned for error, the refusal of their prayers and dismissing bill.

*J. H. Gendell* and *E. S. Miller*, for appellants.—1. The dock between the piers is not Neill's. It belongs to the people at large, except so far as his rights are affected by the Act of Assembly cited in the answer; and apart from this act our right to use the dock is as good as his: Wainwright *v.* McCullough, 13 P. F. Smith 66; Tinicum Fishing Co. *v.* Carter, 11 Id. 21; 3 Kent's Com. 427; Id. 431–2; Washb. on Easements 400; Kusenberg *v.* Browne, 6 Wright 173.

2. The Act of Assembly is unconstitutional: Com. *v.* Penna. Canal Co., 16 P. F. Smith 41; Com. *v.* Fisher, 1 Penna. R. 462; Shrunk *v.* Schuylkill Navigation Co., 14 S. & R. 71; Susquehanna Canal Co. *v.* Wright, 9 W. & S. 9; Bowman's Devisees *v.* Waltham, 2 McLean's C. C. R. 376; 2 Blackst. Com. 344.

3. It was either repealed or done away with by merger of estates, or any rights derived under it, passed to the parties under whom plaintiffs claim: Washb. on Easements 8, 32, 43, 516; Gale & What. on Easements 49, 252, *et seq.;* Id., chap. 5, sect. 1, p. 49 *et seq.*

4. We are bonâ fide purchasers for value, without notice of the statute.

*H. Flanders* and *D. W. Sellers*, for appellees.—The Commonwealth has, *subject to the public right*, conferred a license to the riparian owner on the river Delaware, just as if it were private water, by giving him the right to charge dockage for any moored vessels lying in the water which covers the ground within his protracted lines. The Act of 1852 was mandatory on the harbor master.

This is not a question within the control of the parties, by conveyancing. The impression of sovereignty was cast on the wharf and docks. None but the legislature could recall or extinguish it. The power of the Commonwealth over public navigable waters and rivers is simply that of unqualified and unlimited sovereignty and ownership: Commonwealth *v.* Fisher, 1 Penna. R. 463; Shrunk *v.* Navigation Co., 14 S. & R. 71; Bird *v.* Smith, 8 Watts 434; Susquehanna Co. *v.* Wright, 9 W. & S. 9; Railroad Co. *v.* Ingham, 12 Casey 194; Kusenberg *v.* Browne, 6 Wright 173; Flanagan *v.* City of Philadelphia, Id. 219; McKean *v.* Delaware Division Canal Co., 13 Id. 433; Tinicum Fishing Co. *v.* Carter, 11 P. F. Smith 21.

Judgment was entered in the Supreme Court, March 9th 1874, PER CURIAM.—This case was heard on bill and answer only.

The answer expressly and responsively denies that the dock adjoining the complainants' pier, on the north side thereof, is or was at any time appertenant to the pier. It denies that the deed mentioned in the bill passed to the complainants the exclusive right to the dock, which, by the Act of Assembly set out in the answer, is granted by the Commonwealth to the owners and lessees thereof; and makes an express denial of every averment in the bill to the contrary of the facts set forth in the answer.

In this attitude of the case and without proof that the complainants have any title to the dock on the north side of their pier, they do not stand in a position to question the effect of the Act of 4th May 1852. The case is therefore governed by the general laws relating to the powers and duties of the harbor master. If he acted oppressively or improperly in the execution of his duties as harbor master, this is not the proper remedy.

Decree of the Nisi Prius affirmed with costs and the appeal dismissed.